COURT OF APPEALS
DECISION
DATED AND FILED

June 30, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP45-CR**

Cir. Ct. No. 2022CF381

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

SCOTTY JOE SANDLIN,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Scotty Joe Sandlin appeals from a judgment, entered upon his guilty pleas, convicting him of repeated sexual assault of the

same child and possession of child pornography and from the circuit court's denial of his postconviction motion to withdraw his pleas.[1] Sandlin argues that there was no factual basis established for the possession of child pornography charge and that the court engaged in judicial vindictiveness when it increased his sentence by two years after he successfully challenged his original sentence on the ground that the court relied on inaccurate information. For the reasons that follow, we reject Sandlin's arguments and affirm.

## BACKGROUND

¶2 The State originally charged Sandlin in a three-count complaint with two counts of repeated sexual assault of a child and one count of incest. The charges were based on allegations that Sandlin repeatedly sexually assaulted 15-year-old Beth between September 2011 and September 2018 and 9-year-old Mary between January 2021 and April 2022.[2]

¶3 According to the complaint, these charges were filed after Sandlin's roommate and Mary's parent, Kevin, reported to police that he witnessed "a picture … of a juvenile's vagina" "in the deleted photograph folder" on Mary's tablet computer after Mary sent him a message "to not look at the photographs" on the tablet. Kevin also heard Sandlin's voice on a video, in which the screen was

---

[1] The Honorable Scott J. Nordstrand presided over proceedings related to Sandlin's plea, his original sentencing, and his motion for resentencing based on inaccurate information. The Honorable Scott R. Needham presided over the resentencing hearing and Sandlin's second postconviction motion.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use pseudonyms for the victims and the victims' parents. We use the same pseudonyms utilized by the State in its brief before this court.

All references to the Wisconsin Statutes are to the 2023-24 version.

black, that was on the tablet. Kevin told law enforcement that he believed that the subject of the photograph on the tablet was Mary and, "based on the angle of the photograph," that Mary did not "take[] the photograph." According to a sergeant investigating the accusation, Mary said that she took the photo, and Sandlin denied taking any photographs, touching the tablet, or having inappropriate contact with Beth or Mary. During a forensic interview, however, Mary described various sex acts that Sandlin had engaged in with her.

¶4 Ann, Sandlin's other roommate and Beth's parent, also reported to law enforcement that Sandlin admitted to sexually molesting Beth. During a forensic interview, Beth too described various sex acts that Sandlin had engaged in with her from "around kindergarten age" until "she was around 12 years old," when "she was getting a stronger mind and was able to tell him to stop."

¶5 After Sandlin's arraignment,[3] the State moved for leave to amend the information to add ten counts of possession of child pornography. According to the State, it learned "[i]n a supplemental report … that 38 photos of suspected child pornography were found during searches of electronics from [Sandlin's] residence." When asked, defense counsel did not object to the State's motion during a nonevidentiary pretrial hearing, and the circuit court subsequently granted the motion on the record and accepted Sandlin's not guilty pleas to those additional Counts 4 through 13 of possession of child pornography.

---

[3] A law enforcement officer testified at the preliminary hearing about how the investigation began after Kevin found the photograph of Mary's vagina on the tablet and called police dispatch. The officer also explained that both Beth and Mary "disclose[d] sexual interactions" with Sandlin, including inappropriate touching, oral sex, and intercourse. On cross-examination, the officer stated that Sandlin did not admit to taking the picture on the tablet or to the sexual interactions.

¶6      Eventually, Sandlin reached an agreement with the State whereby he would plead guilty to one count of repeated sexual assault of a child and one count of possession of child pornography.   In exchange, the remaining counts of repeated sexual assault of a child and incest would be dismissed but read in at sentencing, and the remaining nine counts of possession of child pornography would be dismissed.[4]

¶7      During the plea hearing, the circuit court conducted a thorough colloquy with Sandlin, during which Sandlin agreed that he completed and signed the plea questionnaire and waiver of rights form in consultation with defense counsel.  The court also discussed the elements of both crimes, informing Sandlin, "Because you're giving up the right to go to trial, … I want you to know what [the State] would have to prove."  After outlining all the elements, the court confirmed with the attorneys that the elements it had listed were correct and then asked Sandlin, "[D]o you understand that the state would have to prove all of those elements at trial beyond a reasonable doubt?"   Sandlin replied, "Yes, Your Honor."  Sandlin also agreed that he had sufficient time to discuss his pleas with defense counsel.   The court then asked the attorneys, "Counsel, do you both stipulate the complaint provides a sufficient factual basis for these two pleas?" Both attorneys replied, "Yes."  The court found "a factual basis for these two pleas

---

[4] On appeal, the State explains that "[w]hile the complaint listed Victim 1 (Beth) as the victim in Count 1 and Count 2 and listed Victim 2 (Mary) as the victim of Count 3," the victims were switched in the information and amended information, which lists "Victim 2 (Mary) as the victim of Count 1 and listed Victim 1 (Beth) as the victim of Count 2 and Count 3." Additionally, the State observes that it inadvertently "changed the date range" for Sandlin's crimes against Mary from "'on or between 01/02/2021 and 04/30/2022' to 'on or between 09/30/2011 and 09/30/2018.'"  According to the State, "[t]his inadvertent expansion of the date range became a significant factor in the circuit court's decision to order resentencing and disqualify itself." *See infra* ¶¶11-13.

based upon the agreement of the parties and also based upon the preliminary hearing."

¶8      The circuit court ordered a presentence investigation report (PSI) before sentencing.  Relevant to this appeal, Sandlin told the PSI author that he had engaged in a number of prohibited sexual activities, including sexual contact with minors, exposing himself to children, and viewing child pornography, and he admitted to sexually abusing Beth and Mary.  The PSI also provided a summary of Beth's forensic interview, during which Beth reported that Sandlin "would watch other people having sex on his phone," including a video she described as a "little girl" engaging in oral sex.

¶9      At sentencing, the circuit court began the hearing by asking defense counsel whether there were "any concerns raised in [the] review of the PSI." Counsel clarified an issue with regard to a prior conviction for sexual assault of a child in Michigan, but he mentioned nothing with regard to the possession of child pornography charge or other information in the PSI.  After the State gave its sentencing remarks, the court specifically asked it to "address Count 4"—the child pornography count.  The State explained that "Count 4 was the child pornography that was found on his—on the [tablet] that was identified by the family as being the nude photos of one of the children."

¶10     After discussing appropriate sentencing factors and objectives, *see State v. Gallion*, 2004 WI 42, ¶¶39-43, 270 Wis. 2d 535, 678 N.W.2d 197, the circuit court sentenced Sandlin to a 45-year term of imprisonment on the repeated sexual assault of a child charge, comprised of 35 years' initial confinement followed by 10 years' extended supervision.  On the possession of child

pornography charge, the court sentenced Sandlin to 10 years' initial confinement followed by 10 years' extended supervision, to be served consecutively.

¶11　After sentencing, the State moved to correct an error in the amended information. According to the State, the amended information listed the incorrect victimization date range for Count 1, which related to the repeated sexual assault of Mary. It asked the circuit court to "correct the date range on Count 1 [of] the amended information" from between September 30, 2011, and September 30, 2018, "to between January 2, 2021 and April 30, 2022." The State also expressed its belief that Sandlin was not "entitled to withdraw his plea or entitled to a new sentencing based on the error."

¶12　Nevertheless, Sandlin moved for resentencing on the basis of this date range error, arguing that he had a right to be sentenced using accurate information. According to Sandlin, the circuit court "relied on the length of time the acts were occurring in fashioning [his] sentence," and the error was not harmless.

¶13　The circuit court held a nonevidentiary hearing on Sandlin's motion for resentencing. The court determined that it had relied on the inaccurate information at sentencing, stating, "I know what I thought about, and I thought about this. I considered it." The court also determined that the State had not met its burden to demonstrate that the error was harmless. Ultimately, the court vacated Sandlin's judgment of conviction, ordered resentencing, and later disqualified itself from presiding over Sandlin's resentencing.

¶14　At Sandlin's resentencing hearing, presided over by a different judge (the sentencing court), defense counsel was again asked whether there was anything in the PSI that Sandlin wished to clarify or correct. Defense counsel

6

once again mentioned only the prior Michigan conviction. In its sentencing remarks, the State expanded its discussion of the facts related to the possession of child pornography count:

> [R]egarding Count 4, the possession of child pornography, that relates to how this case all came about. [Mary] told her parents … not to look at the images on the [tablet]. They, of course, did. Found a photo of her vagina that appeared she could not have taken. They informed law enforcement and that's what prompted the forensic interviews. Ultimately there's 38 photos of child pornography found on a search of his electronics.
>
> That charged count that he pled to is for that original photo that spurred the investigation. So obviously I think that, in and of itself, is more serious than your typical child pornography case too where he's the one actually creating it. Not that anyone just downloading it, viewing it is not serious, but this is clearly an aggravated version of possession of child pornography.

Beth and Kevin both gave statements describing the impact that Sandlin's crimes have had on them and those around them. Kevin asked the sentencing court to impose "the max for his sentence," while Beth told the court, "I honestly hope he gets a longer sentence than he did before because now I have to go through the emotional mess of this all over again."

¶15 The sentencing court outlined the sentencing factors it was considering, including the seriousness of the offenses, Sandlin's character, and the need to protect the public, as well as other aggravating and mitigating circumstances, including rehabilitative needs and punishment. The court characterized Sandlin's behavior "as repulsive, as disgusting, as morally corrupt" and added that it "shocks the conscience of the community because these are behaviors that have that stone in the puddle that ripple out." In particular, the court made the following statement directly to Beth:

> And I apologize that we're going through there again because what we've done is we've revictimized you by

7

> going through this twice. But we want to make sure it's done right, and we want to make sure it's done in a way that is fair, is just, and in this case will result in an outcome. So I apologize that we've put you through this again. That's not fair, and I should be here dealing out fairness.

Finally, the court identified protection of the public as a significant sentencing factor and determined that a prison sentence was necessary due to the seriousness of Sandlin's crimes.

¶16 Ultimately, the sentencing court imposed a slightly longer sentence for the repeated sexual assault of a child count: 47 years, comprised of 37 years' initial confinement followed by 10 years' extended supervision. Sandlin was sentenced to the same 20-year period of incarceration on the possession of child pornography charge, to be served consecutively.

¶17 Thereafter, Sandlin filed a postconviction motion seeking plea withdrawal or, in the alternative, resentencing before a different judge. As to his request for plea withdrawal, Sandlin argued that there was no factual basis for the possession of child pornography charge because there was no allegation in the complaint that he ever possessed the tablet. As to his request for resentencing, Sandlin alleged that the sentencing court had acted vindictively when it "added two years of initial confinement" to his previous sentence. Sandlin characterized this as "an additional penalty imposed … to hold someone accountable (the defendant) for one of the victims being 'revictimized' by having to go through a second sentencing hearing, which was characterized by the court as unfair to the victim."

¶18 The sentencing court denied Sandlin's postconviction motion by written decision. On the first issue, the court rejected Sandlin's claim that there was no factual basis for the possession of child pornography charge. It explained

that, at the plea hearing, "[t]he Court discussed the elements of [the] crime[] with Sandlin and his attorney stipulated that the complaint provided a sufficient factual basis for the pleas" and that "[t]he record also reflects that not less than 38 images of child pornography were located on electronic devices that Sandlin had access to and/or control over the contents." On the resentencing issue, the court determined that it did not improperly penalize Sandlin by imposing a longer sentence because it properly considered Sandlin's crimes and the sentencing factors, and "[o]bjective information in the record justified the increased sentence and there was no inherent likelihood of vindictiveness under the facts of this case." Sandlin appeals.

## DISCUSSION

### I. Plea Withdrawal

¶19 On appeal, Sandlin renews the arguments in his postconviction motion. He first argues that he is entitled to plea withdrawal because there is an inadequate factual basis to support his conviction for possession of child pornography.

¶20 A defendant is entitled to withdraw his or her plea after sentencing provided that he or she establishes, by clear and convincing evidence, that plea withdrawal is necessary to correct a manifest injustice. *State v. Cain*, 2012 WI 68, ¶25, 342 Wis. 2d 1, 816 N.W.2d 177. We review the circuit court's decision on a plea withdrawal motion for an erroneous exercise of discretion. *State v. Nash*, 2020 WI 85, ¶27, 394 Wis. 2d 238, 951 N.W.2d 404.

¶21 As relevant to this case, a manifest injustice may occur when "a circuit court fails to establish a factual basis that the defendant admits constitutes

the offense pleaded to." *See State v. Thomas*, 2000 WI 13, ¶17, 232 Wis. 2d 714, 605 N.W.2d 836. During a plea colloquy, the circuit court must establish the "factual basis" for the plea, *id.*, ¶14, which requires the court to "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged," WIS. STAT. § 971.08(1)(b).

¶22 "In reviewing the circuit court's decision to accept a plea in a post-sentencing withdrawal appeal, we are not limited to what the circuit court stated it relied upon in determining its factual basis—we may rely upon the entire record in our review." *Nash*, 394 Wis. 2d 238, ¶28; *see also Thomas*, 232 Wis. 2d 714, ¶18. Under the manifest injustice test, it is not "our role … to determine whether the circuit court should have accepted the plea in the first instance, but rather [our role is] to determine whether the defendant should be permitted to withdraw the plea." *Nash*, 394 Wis. 2d 238 ¶28 (citation omitted). "Therefore, when reviewing a circuit court's denial of a post-sentencing plea withdrawal, we will not overturn the circuit court's determination of a sufficient factual basis unless it is clearly erroneous." *Id.*

¶23 As an initial matter, we must address Sandlin's misstatement of the law on appeal. In his brief-in-chief, Sandlin asserts that "[w]hen one reviews the contents of the criminal complaint and the transcript of the preliminary hearing, the sole relevant source of the factual basis for the entry of defendant's pleas, it is apparent there is no factual basis for possession of child pornography" and, further, that "[t]here can be no other source of information relevant to the sufficiency of the plea." Sandlin fails to present any legal authority in support of these propositions. The State responds by citing *Nash* and *Thomas* for the proposition that we may review the entire record on appeal. *See Nash*, 394 Wis. 2d 238, ¶28; *Thomas*, 232 Wis. 2d 714, ¶18. In his reply brief, Sandlin

wisely "concedes that point based on the law cited by the State," and we agree with Sandlin's concession.

¶24   Accordingly, we also agree with the State that Sandlin has failed to prove a manifest injustice by clear and convincing evidence because the entire record demonstrates a factual basis for his plea to possession of child pornography. While the initial criminal complaint did not charge Sandlin with child pornography, the probable cause section outlined that Kevin reported finding a deleted picture of "a juvenile's vagina" on the tablet; that Kevin believed that the individual in the photo was Mary; and that Kevin believed that Mary did not take the photograph, "based on the angle of the photograph." According to the complaint, Kevin also told officers that Sandlin "was the only one home with the kids while [the kids' parents] were out of the house" and that when Sandlin was "confronted with the images," "he became argumentative." The complaint also outlined Mary's forensic interview, wherein she stated that Sandlin had assaulted her. Further, at the preliminary hearing, an officer testified regarding the photograph on the tablet, stating that the photo was the impetus for the investigation in this case.

¶25   Other evidence presented in the record also demonstrates a factual basis for Sandlin's plea. In the State's motion for leave to amend the information, it stated,

> In a supplemental report, the State learned that 38 photos of suspected child pornography were found during searches of electronics from [Sandlin's] residence. The search and seizure was the search warrant done for this case, and the finding of the child pornography by the victim's parents is what led to the sexual assault investigation.

Further, the PSI included the statement that Kevin "reported he located child pornography on his 9 year old daughter's tablet" and that Kevin "informed [law

enforcement] he believed … Sandlin[] placed the child pornography on the tablet." The PSI also contained Beth's statement that Sandlin watched pornography on his phone that included a "little girl" engaging in oral sex. In the PSI, Sandlin admitted to assaulting both Beth and Mary, and he also admitted that he had viewed child pornography. During the sentencing hearings, the circuit court and the sentencing court, respectively, asked whether there were "any concerns raised in your review of the PSI" and whether there was anything Sandlin "wishe[d] to clarify or correct," and neither Sandlin nor his counsel disputed any of the above assertions.

¶26 At Sandlin's plea hearing, the circuit court was careful to review the elements of possession of child pornography on the record with Sandlin. Most relevant here, the court told Sandlin that the State would need "to prove you knowingly possessed a recording or accessed a recording with intent to view it; … that the recording showed a child engaged in sexually explicit conduct; and … that you knew the recording showed a person engaged in actual or simulated sexually explicit conduct." The State and defense counsel then agreed that those elements were correct, and Sandlin said that he understood them. Defense counsel also stipulated that the complaint provided a sufficient factual basis for the pleas.

¶27 Further, Sandlin executed a plea questionnaire and waiver of rights form, with the assistance of counsel, wherein he acknowledged the following: "I understand that if the judge accepts my plea, the judge will find me guilty of the crime(s) to which I am pleading based upon the facts in the criminal complaint and/or the preliminary examination and/or as stated in court." Sandlin informed the circuit court that he had the opportunity to review the form with defense counsel, that he understood everything on it, and that he signed it.

12

¶28    As noted above, the State also addressed the evidence related to the possession of child pornography during both sentencing hearings. Neither Sandlin nor defense counsel challenged the State's representations about the image on Mary's tablet and Sandlin's possession of it at either sentencing hearing. Therefore, based on our review of the entire record, we conclude that the circuit court's finding of a factual basis for Sandlin's plea to possession of child pornography was not clearly erroneous.

¶29    Sandlin's remaining arguments on appeal are not persuasive. First, Sandlin argues that there is no factual basis for the plea because "[n]o reasonable inference can be made that [Sandlin] ever possessed the tablet in question" or that "he ever had dominion or control over the relevant image." He further asserts that certain facts presented by the State are "not proof" or "not even marginal proof" that he "possessed the image on Mary's tablet."

¶30    Sandlin's argument is, at base, an attempt to impose a trial-level standard of proof in the context of a plea, which is not the law in Wisconsin. Said plainly, Sandlin gave up the right to force the State to establish that he possessed the tablet in question beyond a reasonable doubt by entering his plea. As our supreme court has explained, "This is the essence of what a defendant waives when he or she enters a guilty or no contest plea." *See State v. Black*, 2001 WI 31, ¶16, 242 Wis. 2d 126, 624 N.W.2d 363.

¶31    "[A] factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant even though it may conflict with an exculpatory inference elsewhere in the record and the defendant later maintains that the exculpatory inference is the correct one." *Id.*; *see also Broadie v. State*, 68 Wis. 2d 420, 423-24, 228 N.W.2d 687 (1975) (noting

13

that in the context of a negotiated guilty plea, a court "need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea"); *State v. West*, 2024 WI App 35, ¶47, 412 Wis. 2d 758, 8 N.W.3d 460 (same).

¶32     The entire record, as outlined above, supports an inculpatory inference of constructive possession—meaning that Sandlin had knowledge of the tablet and the ability to exercise dominion and control over it. *See State v. Zapata*, No. 2025AP425-CR, slip op. recommended for publication, ¶22 (WI App May 12, 2026) ("Constructive possession may be established by demonstrating that the defendant knowingly had the power and intention to exercise dominion and control over the object, either directly or through others, thus establishing a nexus between himself and the object." (citation omitted)).  Regardless of Sandlin's assertion that evidence in the record may support an exculpatory inference, the circuit court's finding of a factual basis to support Sandlin's plea was not clearly erroneous.

¶33     Second, Sandlin disputes the State's reliance on the 38 items of child pornography that law enforcement allegedly recovered after executing a search warrant to support the charge related to the image on the tablet.  According to Sandlin, "these references to other items of child pornography are not relevant to the factual basis analysis" because "[t]hese counts were dismissed outright." Sandlin asserts that "[t]he factual basis for [his] plea to the possession of [an] item of child pornography on Mary's tablet cannot be some other photograph found later in the investigation."  Sandlin further contends that "[t]he State does not point [to] any law that would have allowed the court, prior to sentencing, to substitute a different photograph to satisfy the factual basis for the conviction, without putting

14

the defendant on notice of the substitution" and that "[t]his would be especially true when the other counts were dismissed outright."

¶34    Initially, we question Sandlin's understanding of the State's argument. At no point in the State's response brief does it mention the 38 items of child pornography in an attempt to "substitute a different photograph." Instead, the State maintains throughout its brief that the possession of child pornography conviction was based on the graphic image of Mary found on the tablet. In any event, we reject Sandlin's suggestion.

¶35    Instead, we consider the State's mention of the 38 items of child pornography to be an attempt to support an inculpatory inference by establishing a nexus between Sandlin and the photograph of Mary on the tablet based on his general access to the tablet as an item in his home and the knowledge that Sandlin does view child pornography. *See id.* As noted above, the record establishes some evidence linking Sandlin to the creation of the explicit image of Mary on the tablet, and that image triggered a search warrant for Sandlin's residence, which yielded an additional 38 images. Therefore, it was reasonable for the circuit court to infer that Sandlin produced the child pornography on the tablet and that, at some point, he exercised dominion and control over the tablet when a subsequent search of his home revealed a larger collection of contraband.

¶36    To the extent that Sandlin's argument in his reply brief suggests that the circuit court could not rely upon the 38 images found as a result of the search warrant because the other counts of possession of child pornography were dismissed, we also disagree. Initially, we note that Sandlin fails to cite any legal authority for this assertion. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that the court of appeals need not address

undeveloped arguments or arguments unsupported by references to legal authority).

¶37    Nevertheless, the fact that the other charges of possession of child pornography were dismissed does not retroactively expunge the information from the entire court file.  The law is clear under ***Thomas*** that we may consider "the totality of the circumstances" across the *entire* record when reviewing a denial of a plea withdrawal motion.  *See **Thomas***, 232 Wis. 2d 714, ¶18; *see also **id.***, ¶21 (holding that a factual basis may "be established through witnesses' testimony, or a prosecutor reading police reports or statements of evidence" or by counsel's stipulation "on the record to facts in the criminal complaint"); *cf. **State v. Frey***, 2012 WI 99, ¶102, 343 Wis. 2d 358, 817 N.W.2d 436 (stating that "a sentencing court may consider dismissed charges when it imposes a sentence").  The facts remain in the record that the State filed a motion for leave to amend the information wherein it alleged that 38 explicit images were found as the result of a search warrant, the State again discussed those 38 images at the second sentencing hearing and Sandlin did not object to the State's motion or to the information presented at sentencing.[5]  Therefore, Sandlin has failed to demonstrate that the sentencing court's determination that there was a sufficient factual basis for his

---

[5] Sandlin asserts in his reply brief that "[i]t is important to recognize that there is nothing in the record to suggest [Sandlin] would have felt he had the right or opportunity to personally interrupt the State's argument or that he had a right to challenge the State's argument."  However, he fails to cite any legal authority to support this claim.  *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).  The record is clear that both defense counsel and Sandlin provided a statement *after* the State at sentencing; therefore, there would have been no need to "interrupt" the State to correct the record.  Further, our supreme court has held that "a defendant has a right at sentencing to speak, WIS. STAT. § 972.14(2), and to refute allegedly inaccurate information that the court might otherwise consider during sentencing," including "read-in charges" and "other dismissed, uncharged offenses."  ***State v. Frey***, 2012 WI 99, ¶¶103-06, 343 Wis. 2d 358, 817 N.W.2d 436.

plea was clearly erroneous, and, as a result, the court did not erroneously exercise its discretion when it denied his postconviction motion for plea withdrawal.

## II. Vindictiveness

¶38     Sandlin also renews his argument that the sentencing court demonstrated judicial vindictiveness in violation of his constitutional right to due process when it increased his sentence on the repeated sexual assault of a child charge from 35 years to 37 years' initial confinement after he successfully attacked his sentence.  According to Sandlin, "[r]ather than imposing a lesser sentence at resentencing, the [sentencing] court added two years of initial confinement," which, upon review of the entire resentencing hearing transcript, appears to be "an additional penalty imposed by the court to hold someone accountable" for Beth being "revictimized."

¶39     "Due process 'requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial.'"  *State v. Sturdivant*, 2009 WI App 5, ¶8, 316 Wis. 2d 197, 763 N.W.2d 185 (2008) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *overruled on other ground by*, *Alabama v. Smith*, 490 U.S. 794 (1989)).  "Because retaliatory motives can be complex and difficult to prove," courts may presume vindictiveness—sometimes referred to as the "*Pearce* presumption"—in some circumstances where a defendant is given a harsher sentence.  *Sturdivant*, 316 Wis. 2d 197, ¶8; *State v. Naydihor*, 2004 WI 43, ¶36, 270 Wis. 2d 585, 678 N.W.2d 220.

¶40     Although *Pearce* created a rebuttable presumption of vindictiveness, "[w]e have recognized that the [United States Supreme] Court has [since] limited the *Pearce* presumption to those contexts where '[i]nherent in the[] circumstances

17

is the reasonable likelihood of vindictiveness.'" *Naydihor*, 270 Wis. 2d 585, ¶36 (fourth and fifth alterations in original; citations omitted); *see also Smith*, 490 U.S. at 799. "[A] reasonable likelihood of vindictiveness exists only if there is a realistic possibility that the sentencing court, after being reversed, may engage in self-vindication and retaliate against the defendant for having successfully pursued appellate relief." *Naydihor*, 270 Wis. 2d 585, ¶37. As our supreme court has explained,

> The concern over actual vindictiveness and self-vindication is premised on the notion that "the institutional bias inherent in the judicial system against the retrial of issues that have already been decided … might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question."

*Id.* (citation omitted). Furthermore, the *Pearce* presumption "can be overcome if 'affirmative reasons' justifying the longer sentence appear in the record and if those reasons are 'based upon objective information' regarding events or 'identifiable conduct on the part of the defendant' subsequent to the original sentencing proceeding." *State v. Church*, 2003 WI 74, ¶55, 262 Wis. 2d 678, 665 N.W.2d 141 (citation omitted).

¶41 The presumption of vindictiveness does not apply, however, when "it was unlikely that this institutional bias, motive for self-vindication, or actual vindictiveness existed in the context in which the defendant was resentenced." *Naydihor*, 270 Wis. 2d 585, ¶38. When the presumption of vindictiveness does not apply, the defendant bears the burden of proving actual vindictiveness. *Church*, 262 Wis. 2d 678, ¶39. Whether an increased sentence following a successful postconviction motion violates due process presents a legal question that we review de novo. *Sturdivant*, 316 Wis. 2d 197, ¶7.

¶42 Here, Sandlin concedes that he cannot prove actual vindictiveness, but he argues that "the presumption of vindictiveness should apply to the facts of this case." According to Sandlin, the sentencing court "was fully aware of everything that had occurred during the first sentencing," and "[t]he record demonstrates the [sentencing court] was very troubled that a second sentencing was necessary" and placed the "blame … on [Sandlin]." Further, Sandlin asserts that "[i]f the presumption of vindictiveness applies, … there are no facts that the court cited to that would objectively justify a harsher sentence." According to Sandlin, "[i]f anything, the record supports a conclusion that [Sandlin's] assaultive conduct against [Mary] was less horrible than as presented during the first sentencing hearing, suggesting a less harsh sentence was appropriate."

¶43 Under the circumstances of this case, we conclude that the *Pearce* presumption of vindictiveness does not apply. The State draws a persuasive parallel between the circumstances in this case and those in *Naydihor*. In that case, the defendant "moved for resentencing due to prosecutorial error," not due to the circuit court's error, and "[t]he court before which he was sentenced granted his postconviction motion and ordered resentencing before a new judge." *Naydihor*, 270 Wis. 2d 585, ¶48. Therefore, an appellate court did not reverse the conviction, and "[t]he judge that resentenced Naydihor was not the same judge that originally sentenced him." *Id.* Under those circumstances, our supreme court determined that "no presumption of vindictiveness [was] warranted because the reasons justifying the prophylactic *Pearce* presumption [were] not present." *Naydihor*, 270 Wis. 2d 585, ¶48.

¶44 Here, the sentencing court also had no realistic motive to be vindictive. First, the error that occurred at Sandlin's sentencing was the result of incorrect information provided by the State in the amended information, not the

circuit court's error. As a result, the circuit court ordered Sandlin's resentencing; therefore, its decision was not overturned by an appellate court ordering a reversal. *See Texas v. McCullough*, 475 U.S. 134, 138 (1986) ("In contrast to *Pearce*, McCullough's second trial came about because the trial judge herself concluded that the prosecutor's misconduct required it."). Because the circuit court corrected the error on its own, and the error belonged to the State, the court would not have been motivated "to engage in self-vindication." *See McCullough*, 475 U.S. at 138-39 (citation omitted).

¶45 Second, and significantly, even if there would have been a suggestion that the circuit court was biased against Sandlin, the judge disqualified himself from conducting Sandlin's resentencing. Therefore, the sentencing court—a "different sentencer[]"—conducted Sandlin's resentencing hearing, and, as our supreme court held in *Naydihor*, "the *Pearce* presumption of vindictiveness does not apply here because the defendant was resentenced by a different judicial authority at his request due to a non-judicial defect at the original sentence hearing, and the resentencing was granted by the original court in which the defect occurred." *See Naydihor*, 270 Wis. 2d 585, ¶56; *McCullough*, 475 U.S. at 140.

¶46 For his part, Sandlin cites our supreme court's decision in *Church* in support of his argument that vindictiveness should be presumed. We conclude, however, that the facts in *Church* are materially different from the facts presented in this case. In *Church*, our supreme court applied the *Pearce* presumption after "the defendant received a longer sentence upon resentencing after successful post-conviction proceedings," during which "[t]he circuit court's decision on multiplicity was reversed, the entire case was remanded, and the circuit court was essentially 'do[ing] over what it thought it had already done correctly.'" *Church*, 262 Wis. 2d 678, ¶54 (second alteration in original; citation omitted). "Inherent in

these circumstances," our supreme court explained, "is the 'reasonable likelihood of vindictiveness' that the *Pearce* presumption is intended to protect against." *Church*, 262 Wis. 2d 678, ¶54 (citation omitted).

¶47 However, the circumstances in this case, as outlined above, "stand in stark contrast" to the situation in *Church*. *See Naydihor*, 270 Wis. 2d 585, ¶48. Further, as the State recognizes, while Sandlin cites the general law for a presumption of vindictiveness, "[h]e does not discuss, much less even cite, those portions of *Church* where the Wisconsin Supreme Court identified U.S. Supreme Court decisions after *Pearce* where it decided that the presumption of vindictiveness does not apply." *See Church*, 262 Wis. 2d 678, ¶¶33-39. Unlike *Church*, the circumstances of this case did not "create[] the same sort of likelihood of vindictiveness as to require application of the presumption." *See id.*, ¶¶53-54.

¶48 Additionally, Sandlin faults the sentencing court, "[u]nder the law from *Church*," for failing "to place on the record objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" in support of the harsher sentence. However, the requirement that "objective information" "appear in the record" is based on the need to rebut the *Pearce* presumption. *Church*, 262 Wis. 2d 678, ¶55 (citation omitted). Given our conclusion above that the presumption does not apply, we reject Sandlin's argument that the sentencing court failed to meet its obligations under the law.

¶49 The sentencing court's comments at the sentencing hearing and its decision denying Sandlin's motion for postconviction relief demonstrate that it relied on a reasoned process and that its sentencing decision was based on the

appropriate sentencing factors. Sandlin has failed either to establish that the presumption of vindictiveness applies or to prove actual vindictiveness on the part of the sentencing court in fashioning a longer sentence. Therefore, we affirm Sandlin's judgment of conviction and the order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.